IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JULIUS JONES,                               No. CIV S-04-0950-LKK-CMK-P

    Petitioner,

  vs.                                       FINDINGS AND RECOMMENDATIONS

DAVID RUNNELS, et al.,

    Respondents.

_____/

       Petitioner, a state prisoner proceeding with appointed counsel, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pending before the court are petitioner's amended petition for a writ of habeas corpus (Doc. 62) and respondents' answer (Doc. 68). Petitioner has not filed a reply.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

# I. BACKGROUND

**A.   Facts**[1]

The state court recited the following facts, and petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

> About 5:45 p.m. on July 2, 1998, defendant entered the 98 Cent Clearance Center on Greenback Lane in Citrus Heights and approached Assistant Manager Barbara Bradley who stood at register 5. He asked Bradley for his backpack which he claimed he left at register 6. Bradley told him that if he left it at that register to check there. Checker Julie Rosensteel did not see a backpack at register 6 and so reported. Bradley headed to the floor safe located at register 6 to change a $50 bill. As soon as Bradley bent down and opened the store safe, defendant used a thrusting motion with the upper portion of his body to push Bradley. He then said, "what I want is in there," and he grabbed a plastic box which contained $1,305. Bradley fell over on her side hitting the safe door. Defendant fled out the front door with a customer, Curtis Richardson, in pursuit yelling, "stop, thief."
>
> In the parking lot, two other men, Scott Hargrove and George Kessler, III, joined the chase. Defendant jumped into the driver's seat of a car parked in the lot and tried to start the car. His pursuers surrounded the car. Richardson grabbed at the keys and then the plastic box with the money on the console. Defendant started to rummage around in the car stating, "Where's my fucking gun." Kessler and Hargrove dragged defendant out of the car and, along with Richardson, detained defendant until the police arrived.
>
> No backpack was found in the store.
>
> When interviewed by Sacramento County Sheriff's Deputy Michael Goold, defendant gave a false name and birthdate. Defendant explained that he had gone to the grocery store to get a soda and he saw people chasing another man. When the man fled past defendant, the people started chasing defendant. Defendant dove into the car to get away from the people chasing him. He did not know how the keys got into the car nor how the money got into the car. He said the man the people had originally been chasing had money. Defendant denied having been in the 98 Cent store. The officer spent about seven hours with defendant who seemed coherent, understood the questions, and responded appropriately. Defendant never said anything about having used drugs.

/ / /

---

[1]   Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct." Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. See id. These facts are, therefore, drawn from the state court's opinion(s), lodged in this court. Petitioner may also be referred to as "defendant."

    Defendant testified and admitted reaching into the safe and taking the money in the plastic box. He claimed he was "high" and "tripping." He then "panicked" and fled from the store. Earlier in the day, he had smoked marijuana and suggested that it had been laced with some other drug, maybe cocaine. When he grabbed the money, he did not know what he was doing. He denied "deciding" to use his upper body to knock over Bradley. In the process of reaching for the box, defendant claimed his upper body hit her and knocked her to the ground.
    Defendant admitted having 10 prior serious felony convictions.
    A defense psychologist who specializes in the effects of psychoactive drugs testified that cocaine increases impulsiveness and causes a person to have reactions similar to an adrenaline rush. The psychologist had no opinion whether defendant reacted the same from cocaine because the toxicology did not reflect how much cocaine was in his body.
    When defendant was arrested, he complained of chest pains. At the hospital, defendant tested positive for cocaine. The treating physician explained that defendant stated he had ingested cocaine several days before but said nothing about ingesting cocaine or any other drug that day.

**B.** **Procedural History**

    Petitioner was convicted of second degree robbery and the court found true the allegation that petitioner had two prior serious felony convictions. Petitioner's motion to strike one of the prior convictions was denied and petitioner was sentenced to a prison term of 25 years to life under California's three strikes law. The California Court of Appeal affirmed the conviction and sentence on direct review. The California Supreme Court denied direct review and petitioner's habeas corpus petition, both without comment or citation.

## II.  STANDARDS OF REVIEW

    Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998). The AEDPA does not, however, apply in all circumstances. When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal

habeas court must review the claim de novo. See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner). When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist." Pirtle, 313 F. 3d at 1167.

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F. 3d 1223, 1229 (9th Cir. 2001). Thus, under § 2254(d), federal habeas relief is available only where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. Under both standards, "clearly established law" means those holdings of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 127 S.Ct. 649, 653-54 (2006). "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. Jan. 17, 2008) (en banc). Supreme Court precedent is not clearly established law, and therefore federal habeas relief is unavailable, unless it "squarely addresses" an issue. See Moses v. Payne, ___ F.3d ___ (9th Cir. Sept. 15, 2008)

(citing Wright v. Van Patten, 128 S.Ct. 743, 746 (2008)).  For federal law to be clearly established, the Supreme Court must provide a "categorical answer" to the question before the state court.  See id.; see also Carey, 127 S.Ct at 654 (holding that a state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice created by state conduct at trial because the Court had never applied the test to spectators' conduct).  Circuit court precedent may not be used to fill open questions in the Supreme Court's holdings.  See Carey, 127 S.Ct. at 653.

        In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards.  A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts.  See id. at 405.  A state court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases.  See id.  In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules.  Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard.  See id. at 406.  If a state court decision is "contrary to" clearly established law, it is reviewed to determine first whether it resulted in constitutional error.  See Benn v. Lambert, 293 F.3d 1040, 1052 n.6 (9th Cir. 2002).  If so, the next question is whether such error was structural, in which case federal habeas relief is warranted.  See id.  If the error was not structural, the final question is whether the error had a substantial and injurious effect on the verdict, or was harmless.  See id.

/ / /

/ / /

/ / /

State court decisions are reviewed under the far more deferential "unreasonable application of" standard where it identifies the correct legal rule from Supreme Court cases, but unreasonably applies the rule to the facts of a particular case. See id.; see also Wiggins v. Smith, 123 S.Ct. 252 (2003). While declining to rule on the issue, the Supreme Court in Williams, suggested that federal habeas relief may be available under this standard where the state court either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. See Williams, 529 U.S. at 408-09. The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous or incorrect application of federal law. See id. at 410; see also Lockyer v. Andrade, 123 S.Ct. 1166, 1175 (2003). An "unreasonable application of" controlling law cannot necessarily be found even where the federal habeas court concludes that the state court decision is clearly erroneous. See Lockyer, 123 S.Ct. at 1175. This is because ". . . the gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Id. As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless. See Benn, 283 F.3d at 1052 n.6.

The "unreasonable application of" standard also applies where the state court denies a claim without providing any reasoning whatsoever. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000). Such decisions are considered adjudications on the merits and are, therefore, entitled to deference under the AEDPA. See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982. The federal habeas court assumes that state court applied the correct law and analyzes whether the state court's summary denial was based on an objectively unreasonable application of that law. See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

### III.  DISCUSSION

Through appointed counsel, petitioner raises two claims:  (1) the trial court erred when it failed to instruct the jury that specific intent to use force or fear is an essential element of robbery; and (2) the trial court erred when it allowed the prosecution to impeach petitioner with evidence of ten prior felony convictions for crimes involving moral turpitude.[2]

**A.     Jury Instruction**

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of a transgression of federal law binding on the state courts.  See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  It is not available for alleged error in the interpretation or application of state law.  See Middleton, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986).  Habeas corpus cannot be utilized to try state issues de novo.  See Milton v. Wainwright, 407 U.S. 371, 377 (1972).  Thus, a challenge to jury instructions does not generally give rise to a federal constitutional claim.  See Middleton, 768 F.2d at 1085) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).

However, a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process." Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980)); see also Lisenba v. California, 314 U.S. 219, 236 (1941).  In order to raise such a claim in a federal habeas corpus petition, the "error alleged must have resulted in a complete miscarriage of justice." Hill v. United States, 368 U.S. 424, 428 (1962); Crisafi v. Oliver, 396 F.2d 293, 294-95 (9th Cir. 1968); Chavez v. Dickson, 280 F.2d 727, 736 (9th Cir. 1960).

///

---

[2]     A third claim raised in petitioner's initial pro se petition is abandoned.

In general, to warrant federal habeas relief, a challenged jury instruction "cannot be merely 'undesirable, erroneous, or even "universally condemned,"' but must violate some due process right guaranteed by the fourteenth amendment." Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988) (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973)). To prevail, petitioner must demonstrate that an erroneous instruction "'so infected the entire trial that the resulting conviction violates due process.'" Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp, 414 U.S. at 147). In making its determination, this court must evaluate an allegedly ambiguous jury instruction "'in the context of the overall charge to the jury as a component of the entire trial process.'" Prantil, 843 F.2d at 817 (quoting Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir. 1984)). Further, in reviewing an allegedly ambiguous instruction, the court "must inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." Estelle, 502 U.S. at 72 (quoting Boyde v. California, 494 U.S. 370, 380 (1990)). Petitioner's burden is "especially heavy" when the court fails to give an instruction. Henderson v. Kibbe, 431 U.S. 145, 155 (1977). Where an instruction is missing a necessary element completely, the "reasonable likelihood" standard does not apply and the court may not ". . . assume that the jurors inferred the missing element from their general experience or from other instructions. . . ." See Wade v. Calderon, 29 F.3d 1312, 1321 (9th Cir. 1994). In the case of an instruction which omits a necessary element, constitutional error has occurred. See id.

It is well-established that the burden is on the prosecution to prove each and every element of the crime charged beyond a reasonable doubt. See In re Winship, 397 U.S. 358, 364 (1970). Therefore, due process is violated by jury instructions which use mandatory presumptions to relieve the prosecution's burden of proof on any element of the crime charged. See Francis v. Franklin, 471 U.S. 307, 314 (1985); see also Sandstrom v. Montana, 442 U.S. 510 (1979). A mandatory presumption is one that instructs the jury that it must infer the presumed fact if certain predicate facts are proved. See Francis, 471 U.S. at 314. On the other hand, a permissive presumption allows, but does not require, the trier of fact to infer an elemental fact

from proof of a basic fact. See County Court of Ulster County v. Allen, 442 U.S. 140, 157 (1979). The ultimate test of the constitutionality of any presumption remains constant – the instruction must not undermine the factfinder's responsibility at trial, based on evidence adduced by the government, to find the ultimate facts beyond a reasonable doubt. See id. at 156 (citing In re Winship, 397 U.S. at 364).

As to this claim, the California Court of Appeal stated:

> Relying upon People v. Sanchez (1950) 35 Cal.2d 522, defendant contends the trial court failed to instruct that specific intent to take property by force or fear is an essential element of the crime of robbery. This contention lacks merit.
>
> * * *
>
> Penal Code section 211 defines robbery as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." The trial court properly instructed the jury in the language of CALJIC No. 9.40 which correctly defines the crime of robbery.
> "[T]he 'felonious taking' required for robbery under section 211 . . . is a taking accomplished with felonious intent, that is, the intent to steal, . . ." (citation omitted). "[T]he requisite specific intent" for robbery is the "intent [] to deprive the owner of the property taken. [Citations]." (citation omitted). There is no specific intent to use force or fear to obtain the property, but rather the taking "'must be accomplished by force or fear.'" (citations omitted). "[Robbery] consists of larceny plus two aggravating circumstances: (1) when the property is taken from the person or presence of another, and (2) when the taking is accomplished by the use of force or threatened force. [Citations]." (citation omitted). Where the specific intent permanently to deprive is formed after the use of force, robbery has not occurred. (citation omitted).

In a footnote, the state court observed: "Here, the jury was instructed on the lesser included offense of grand theft, which does not include the element of force or fear (citation omitted), and on after-formed intent." Continuing its analysis, the Court of Appeal stated:

> In Sanchez, the defendant was charged with robbery, vehicle theft, and two counts of assault with a deadly weapon. (citation omitted). On the robbery charge, the issue was whether the defendant, who claimed intoxication, had the specific intent to permanently deprive the owner of the property. (citation omitted). The defense requested an instruction which included the following with respect to the robbery charge: "Thus in the crime of robbery of which the defendant . . . is accused in this case in

9

> Count 3 of the information, the specific intent to steal property from the possession of the owner by means of violence, force, or fear with the intention of permanently depriving the owner of his property is a necessary element of the crime." (citation omitted). The trial court refused the instruction. Although the requested instruction included arguably erroneous language with respect to the assault charge, the Supreme Court concluded the trial court erred because the erroneous language concerning the assault could have been stricken and the remainder, including the statement with respect to the robbery, could have been given. (citation omitted).
> 
> Defendant interprets Sanchez as requiring an additional specific intent to use force or fear. Sanchez did not so hold. The issue before Sanchez was whether the defense-requested instruction should have been given, not whether the requisite specific intent is the intent to use force or fear. Defendant reads too much into the language of the instruction refused in Sanchez and his interpretation is not supported by recent cases.
>
> * * *
>
> The trial court properly instructed the jury that for robbery, the only requisite specific intent is the intent to steal.

Petitioner argues that this analysis of Sanchez is incorrect because:

> In Mr. Jones's case, the trial court failed to instruct the jury that they must find, beyond a reasonable doubt, Mr. Jones used force against the person of the owner or any person present with *the specific intent* to overcome his or her physical resistance or physical power of resistance; or that Mr. Jones threatened the imminent use of force against the person of the owner or any person present with *the specific intent* to compel acquiescence to the taking of or escaping with the property. The trial court eliminated an essential element of the crime. The element omitted went to the heart of Mr. Jones's defense; Mr. Jones's entire defense was based on his inability to form the specific intent necessary to commit the crime of robbery. Mr. Jones was denied due process when the trial court failed to instruct on an essential element of the offense.

Petitioner's claim lacks merit. Petitioner would only be correct if the specific intent to use force or fear is an element of robbery under California law. As the state court explained, it is not. On federal habeas review, this court is bound by a state court's interpretation of state law. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005). Because this court is bound by the state court's interpretation of state law, and because robbery under California law does not require the specific intent to use force or fear, the state court's determination was neither contrary

///

to nor an unreasonable application of any clearly established federal law.[3]

### B. Evidentiary Ruling

Because federal habeas relief does not lie for state law errors, a state court's evidentiary ruling is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process. See Drayden v. White, 232 F.3d 704, 710 (9th Cir. 2000); Spivey v. Rocha, 194 F.3d 971, 977-78 (9th Cir. 1999); Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991); see also Hamilton v. Vasquez, 17 F.3d 1149, 1159 (9th Cir. 1994). To raise such a claim in a federal habeas corpus petition, the "error alleged must have resulted in a complete miscarriage of justice." Hill v. United States, 368 U.S. 424, 428 (1962); Crisafi v. Oliver, 396 F.2d 293, 294-95 (9th Cir. 1968); Chavez v. Dickson, 280 F.2d 727, 736 (9th Cir. 1960).

Regarding this claim, the state court concluded that the trial court did not abuse its discretion in allowing the impeachment evidence.[4] At trial, the parties brought cross-motions in limine concerning the use for impeachment purposes of petitioner's four prior convictions in 1982 for robbery, five prior convictions in 1989 for robbery, and one prior conviction in 1989 for assault with a deadly weapon. The prosecution sought to use these convictions to impeach petitioner's testimony in the event he chose to testify at trial. The defense argued that the evidence should be excluded under California Evidence Code § 352 because its probative value

---

[3] Given this conclusion, the court need not reach respondents' contention that the federal claim is unexhausted because petitioner only argued to the state court that the trial court erred as a matter of state law and never raised the due process aspect of the claim.

[4] The Court of Appeal's decision did not address the constitutional due process aspect of the claim. The court stated that ". . . defendant's federal constitutional challenge is waived for failure to object on this ground." Respondents do not argue that this claim is procedurally barred. Rather, respondents observe that the California Supreme Court concluded in People v. DiPriest, 42 Cal.4th 1, 19 (2007), that "[o]n the merits, no separate constitutional discussion is required [by the appellate court] . . . where rejection of a claim that the trial court erred on the issue presented to that court necessarily leads to rejection of any constitutional theory or 'gloss' raised for the first time here." Based on this, respondents concede that the Court of Appeal's determination that the trial court did not abuse its discretion necessarily constitutes a merits determination of the federal due process claim.

was outweighed by its prejudicial effect. In his case-in-chief, defendant testified on his own behalf and admitted having four convictions in 1982 and five convictions in 1989 for serious felonies. He also admitted a conviction for an "assault charge" in 1989. On cross-examination, the prosecution discussed each prior conviction, including the assault conviction, referring to each as either a "felony" or "felony involving moral turpitude."[5]

> In discussing petitioner's evidentiary claim, the Court of Appeal stated:
>
>> Defendant argues the trial court abused its discretion in failing to exclude or sanitize the assault with a deadly weapon conviction, in essentially labeling defendant a habitual offender which allowed the jury to conclude the unspecified convictions were robberies or theft-related and in permitting impeachment with 10 convictions when one from 1982 and one from 1989 would have been sufficient to ensure defendant did not testify with a false aura of veracity. Defendant has failed to demonstrate abuse.

Citing People v. Mendoza, 78 Cal.App.4th 918, 927 (2000), the court first concluded that the prosecution was entitled to explore all ten prior convictions because, to only explore one from 1982 and one from 1989 would have created a false sense of veracity given that petitioner had only spent 11 months of the prior 18 years out of custody. The court observed: "Defendant did not commit an isolated offense in 1982 and again in 1989." Petitioner now argues that this analysis is flawed because the 1982 and 1989 convictions did not arise from ten separate incidents. For example, as to the 1989 convictions, petitioner states that multiple robbery convictions resulted only because there were multiple people present at the Albertson's grocery store he robbed at gunpoint. Petitioner's argument is not persuasive. The court agrees with the state court that the trial court did not abuse its discretion, particularly given that petitioner was

---

[5] This labeling was consistent with the trial court's ruling on the cross-motions in limine. Specifically, the trial court ruled: ". . . [T]he Court does find that because he is charged with an identical offense to nine of these priors, that I think it would be appropriate to sanitize the prior two felonies involving moral turpitude and readiness to do evil." Because the assault with a deadly weapon conviction was a dissimilar crime to the charged offense, the court left it to the prosecution's discretion ". . . as to whether they want to ask me specifically about that crime or just add another felony involving moral turpitude."

12

certainly free on re-direct examination to explain that the prior convictions arose from fewer than ten discrete incidents.  There was no undue prejudice inherent in the trial court's evidentiary ruling because petitioner could have avoided any mistaken belief by the jury that the 10 priors were the result of 10 different incidents.

        Petitioner also argues that, contrary to the trial court's ruling that reference to the prior robbery convictions should be sanitized, they were nonetheless referred to as theft crimes. Petitioner asserts that this reference allowed impermissible propensity evidence because the jury could reach the conclusion that, because petitioner committed theft crimes in the past, he must have committed the charged robbery.  As respondents note, however, there is no Supreme Court precedent holding that admission of propensity evidence is unconstitutional.  In Mejia v. Woodford, the Ninth Circuit stated:

> Mejia can point to no Supreme Court precedent establishing that admission of propensity evidence . . . is unconstitutional.  We cannot say that the California Court of Appeal decision was contrary to clearly established Supreme Court precedent.
>
> 534 F.3d 1036 (9th Cir. 2008).

Because, as the Ninth Circuit has recognized, there is no clearly established law on the issue of propensity evidence, habeas relief is unavailable.  See id.; see also Lawson v. Palmateer, 515 F.3d 1057 (9th Cir. 2008).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

### IV. CONCLUSION

Based on the foregoing, the undersigned recommends that petitioner's amended petition for a writ of habeas corpus (Doc. 62) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 20 days after being served with these findings and recommendations, any party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 5, 2009

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE